# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARTIN J. BOWLIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 3:15-CV-421-JVB ) ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Martin Bowlin has appealed the Acting Commissioner's denial of Social Security Disability benefits. For the reasons stated below, the Court AFFIRMS the decision of the Acting Commissioner.

**A.     Overview of the Case**

Plaintiff applied for disability insurance benefits and supplemental security income with the Social Security Administration. Plaintiff pursued this application through proper administrative procedures, eventually finding himself before an Administrative Law Judge (ALJ). The ALJ, after conducting a hearing, found that Plaintiff was not disabled for purposes of the Social Security Act from February 16, 2013, through March 17, 2014. (R. at 47–48).

**B.     Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must ensure that the ALJ has built an "accurate and logical

bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

**C.  Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.  Analysis**

Plaintiff alleges error in two primary respects: (1) the ALJ failed to properly evaluate Plaintiff's issue regarding work attendance and sustainability, thereby failing to properly consider it in the assessment of Plaintiff's residual functional capacity (RFC); and (2) the ALJ relied on an out-of-date medical opinion to support a "light" RFC when more recent evidence would have supported a more restricted RFC.

**(1)  *Work Attendance and Sustainability***

2

The vocational expert at the ALJ hearing testified that "if an individual misses two days of work per month or more, it will preclude employment both in the hypothetical individual's related past work or any job in the national economy." (*See* R. at 110). The ALJ further clarified by asking: "So would this individual be able to do the jobs you previously identified at the sedentary level? The order clerk, the document preparer and the charge account clerk?" (*Id.*) The vocational expert responded that he would not be able to—"[n]ot if they miss two days of work per month." (*Id.*)

Plaintiff points out that merely attending the documented medical procedures would have made him unable to hold employment without missing at least two days per month. (Pl.'s Br. at 17 ("Plaintiff's recitation of the medical evidence shows 30 days of just hands on medical care within a medical facility from February 16, 2013 through January 1, 2014, without consideration of the additional days required for recovery time from these procedures, or the amount of time prior to a visit to the emergency room the claimant was unwell.").)

This point sounds compelling because it seems to starkly rebut the ALJ's finding that Plaintiff could work. How, after all, could Plaintiff have held a job when merely complying with his treatment plan would have precluded him from doing so? A closer reading of the expert's testimony, however, reveals a disconnect: when responding to the ALJ's question regarding work attendance, the vocational expert was talking about a specific hypothetical which was ultimately found inapplicable to Mr. Bowlin.

During the hearing, the ALJ posed three hypotheticals to the vocational expert:

First, the ALJ asked if a hypothetical person able to perform "light work"[1] could perform Plaintiff's past work, either as-performed or as it is generally performed in the national economy. (R. at 102–03). The expert responded affirmatively.

The ALJ's second hypothetical was similar to the first. The primary difference was a change to "sedentary" work instead of "light." The expert testified that the only job the claimant could perform his job as a cab driver as he indicated he performed it. The expert also opined that the individual could work as an order clerk, a document preparer, and a charge account clerk.

For the third, the ALJ added a limitation: could that sedentary individual also maintain those jobs if he was absent from work two days per month?[2] To this, the expert stated that he could not.

Certainly, an ALJ need not discuss every piece of evidence in the record in his opinion. *Moore v. Colvin*, 743 F.3d 1118, 1123. Simultaneously, however, he may not relegate his discussion and analysis only to the evidence supporting his conclusion while coincidentally ignoring the evidence which undermines it. *See id.*

True, the ALJ did not explicitly discuss the vocational expert's testimony about absences. But the expert's answers spoke to a hypothetical claimant with a "sedentary" RFC; the claimant here was found to possess a "light" RFC. The expert's testimony regarding absences was thus rendered irrelevant to the claimant's determination. The ALJ certainly would have been required to discuss that testimony if he found the claimant had a sedentary RFC, but this was not the case.

---

[1] As defined in the Dictionary of Occupational Titles (DOT), Appendix C. The DOT categorizes the physical demands of employment into five different exertion levels: sedentary work, light work, medium work, heavy work, and very heavy work.

[2] The ALJ also added a limitation for being off-task 10% of the work day. The expert said, however, that such a limitation would not preclude employment for the sedentary jobs.

The ALJ was issuing a determination of the claimant's status. He was not required to argue in the alternative.

**(2)** *Medical Opinions Supporting a "Light" RFC*

The ALJ considered primarily six sources of opinion evidence: all doctors. (R. at 45–46).

Doctor Vemulapalli had certain opinions about what Plaintiff could and could not physically do, but the ALJ gave his opinion "little weight" because it was based on a bilateral diagnosis of chronic venous stasis—a diagnosis which was not ultimately supported.

Doctor Montoya had a somewhat more liberal idea of Plaintiff's physical abilities. The ALJ gave this one "significant weight" because it was consistent with Doctor Concoran's opinion, along with clinical observation of Plaintiff's gait and "no evidence of more than trace edema" showing up in the record. (R. at 45, 441). Doctor Badry's opinion was likewise given significant weight because it was consistent with Dr. Badry's own observations, in addition to Plaintiff's conduct of not seeking treatment for a mental impairment. These opinions supported a finding of a "light" RFC.

Finally, the ALJ considered the opinions of Doctors Kladder and Gange. These both came to similar conclusions regarding Plaintiff's affect. They were both given little weight, however, because they were not supported by Dr. Badry's evaluation or opinion, because of Plaintiff's lack of supported mental health treatment history, or other evidence in the record.

Plaintiff bases two arguments on these medical opinions: (a) The ALJ was required to acquire additional medical evidence. The ALJ erred in failing to acquire such evidence and, accordingly, improperly evaluated Plaintiff's RFC. (b) The ALJ improperly evaluated Plaintiff's

RFC because he did not explain how it incorporates evidence received after Doctor Montoya's opinion.

(a)     *Summoning Additional Evidence*

An ALJ should "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000). He need not summon more evidence if that in the record is adequate to establish the claimant is not disabled. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

The evidence in the record was adequate to determine Plaintiff's disability status. Plaintiff may not agree with the ALJ's interpretation of the record—specifically regarding the issue of edema—but the ALJ need not exhaust every potential inquiry before issuing a determination. He certainly *could* have summoned additional evidence, but adequacy is a low standard. The record before him was certainly adequate to find the claimant not disabled, so the ALJ was thus not required to summon additional evidence.

(b)     *Subsequent Evidence Received*

Plaintiff points to several pieces of evidence which were (apparently) not discussed by the ALJ. (Pl.'s Br. at 21 (citing R. at 44, 46, 426–27, 440–41, 443, 494–98)). The only problem is the ALJ did, in fact, address them. Defendant pointed this out in her Response, but Plaintiff never filed a Reply. On this point, the Court finds it sufficient to say that Plaintiff has not met his burden of persuasion.

**E.     Conclusion**

For the reasons stated above, the Court AFFIRMS the decision of the Acting Commissioner

SO ORDERED on March 30, 2017.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE